UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

NORBERTO BONILLA,                               :

                        Petitioner,        :        **REPORT AND**
                                                        **RECOMMENDATION**
          -against-                    :        **TO THE HONORABLE**
                                                          **LAURA TAYLOR SWAIN**

ELIOT SPITZER, Attorney General,            :

                                         04 Civ. 2974 (LTS)(FM)

                      Respondent.       :

------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.    Introduction

        Petitioner Norberto Bonilla ("Bonilla") brings this pro se habeas proceeding, pursuant to 28 U.S.C. § 2254, to challenge his August 4, 2000, conviction on one count of Course of Sexual Conduct Against a Child in the First Degree after a trial in Supreme Court, Bronx County, before the Honorable David Stadtmauer and a jury. Following Bonilla's conviction, Justice Stadtmauer sentenced him to an indeterminate prison term of seven and one-half years to fifteen years. In his habeas petition, Bonilla contends that: (a) the prosecutor failed to disclose Brady material; (b) he was denied effective assistance of counsel; and (c) the conviction was against the weight of the evidence. (See Pet. ¶¶ 3, 11, 15). None of these claims has any merit. Accordingly, as set forth below, Bonilla's petition should be denied. Additionally, pursuant to 28 U.S.C.

1

§ 2253(c)(2), Bonilla should be denied a certificate of appealability because he has failed to make a substantial showing of the denial of a constitutional right.

II.   Background

    A.   Trial

        1.   People's Case

The People's proof at trial would have permitted a reasonable juror to find as follows:

In 1997, Sofia T. was nine years old[1] and lived in an apartment at 1555 Grand Concourse in the Bronx with her mother, her two brothers, and her grandmother, Anna Calderon ("Calderon").  (Tr. 41, 44, 92-93).[2]  In May of that year, Calderon moved to another residence, and then to Santo Domingo in the Dominican Republic.  (Id. at 16, 93).  Calderdon decided to rent the resulting spare room to Bonilla, whom she had known for four years through her church and because they both sold Avon products.  (Id. at 17-19).  Bonilla moved into the apartment in June 1997, remaining there until Calderon returned from Santo Domingo approximately one year later.  (Id. at 16-19, 26, 45-46, 93).  Upon Calderon's return, Bonilla moved to an apartment one block away on Walton Avenue.  (Id. at 19-20, 46-47).

---

[1]   Pursuant to Section 50-b of the New York Civil Rights Law, the name of the victimized child has been abbreviated to conceal her identity.

[2]   "Tr." refers to the transcript of the jury trial.  "1/11 Tr." refers to the minutes of a pretrial conference on January 11, 2000.  "5/26 Tr." refers to the minutes of a pretrial conference on May 26, 2000.

When Bonilla first moved into Calderon's apartment, Sofia considered him a friend. Bonilla taught her games and would sometimes gave her money. (Id. at 47). At times, Bonilla picked her up from school or the home of her babysitter, Diana Lopez. (Id. at 48-49). Bonilla also took Sofia to visit her mother at work. (Id. at 49).

Precisely twenty-seven days after moving into Calderon's apartment, Bonilla kissed Sofia. (Id. at 52, 68). Sofia testified that she recalled the date because she had been counting the days with sticks just as she had seen children do in a movie. (Id. at 68). Bonilla proceeded to kiss Sofia's breasts, touch her vagina, and force her to place his penis in her mouth. (Id. at 52-53). At the time, her mother was at work and her brothers were outside playing basketball. (Id. at 54, 67). That day, Bonilla also threatened Sofia that if she did not cooperate with him, he would "kill [her] . . . [,] throw [her] body in an alley" and "kill [her family] as well." (Id. at 69-70). Sofia did not tell anyone about these events because of the threats. (Id. at 74-75).

The abuse continued on a regular basis, sometimes several times a week, when Sofia's brothers were outside of the apartment. (Id. at 57-58, 63). Bonilla also continued to abuse Sofia sexually after he moved to Walton Avenue, in either her home, his apartment, or his car. (Id. at 61-62). If Sofia did not obey, Bonilla would strike her legs and head. (Id. at 62).

On one occasion, Bonilla took a photograph of Sofia's vagina and told her that "nobody was going to suspect [him] if anybody found the picture." (Id. at 58-60).

Bonilla also showed Sofia pornographic films at his home on Walton Avenue, instructing her that she should "do the same thing." (Id. at 65-67).

Bonilla touched Sofia for the last time on June 25, 1999. (Id. at 71). On that date, Sofia accompanied her mother to Bonilla's Walton Avenue apartment. While her mother was in the kitchen preparing a sandwich, Bonilla took Sofia to his bedroom and kissed her on the mouth. (Id. at 71, 88). Bonilla also unzipped her pants and kissed the outside of her vagina. (Id. at 87-88). He again threatened to kill her if she told anyone. (Id. at 72, 88).

On September 8, 1999, Sofia instructed her four-year old cousin to place his mouth on her breasts, and he complied. (Id. at 89). As this was happening, Calderon walked into Sofia's room. When Calderon asked Sofia, "[W]here did you get that from?," Sofia responded by lowering her head and locking herself in her room. (Id. at 21, 32).

Calderon told Sofia's mother about this incident when she returned from work. (Id. at 20-22, 31-34). After Sofia's mother assured her that if she explained what had happened, nobody would harm her, Sofia informed her mother about the sexual abuse. (Id. at 90). Calderon then suggested that Sofia's mother call the police. (Id. at 22).

Sergeant Keith DeGiorgio and Police Officer Monica Bermudez responded to the call. (Id. at 4, 185-86). Officer Bermudez observed Sofia "sitting down in a

slumped position looking downwards and . . . fidgeting with her fingers." (Id. at 5). During a thirty-minute interview outside the presence of her mother and grandmother, Sofia gave Officer Bermudez information about the abuse she suffered, including Bonilla's name and address. (Id. at 5-7, 10). Later that night, Sofia was taken to Lincoln Hospital by ambulance. (Id. at 6). Sergeant DeGiorgio then went to 1535 Walton Avenue, where he arrested Bonilla. (Id. at 186-88).

        2.      Defense Case

Bonilla did not call any witnesses at trial.

    B.    Conviction and Sentencing

On July 13, 2000, the jury returned a verdict of guilty on the sole count of Course of Sexual Conduct Against a Child in the First Degree. (Id. at 329). Subsequently, on August 4, 2000, Justice Stadtmauer sentenced Bonilla to seven and one-half years to fifteen years in prison. (See Pet. ¶¶ 2, 3).

    C.    Subsequent Procedural History

Bonilla appealed his conviction to the Appellate Division, First Department, raising as his only claim that the verdict was against the weight of the evidence. (See Aff. of Ass't Dist. Att'y Cynthia J. Pree, sworn to on Oct. 19, 2004 ("Pree Aff.") Ex. 1 (Appellant's Br. on Appeal)). On February 11, 2003, the Appellate Division unanimously affirmed Bonilla's conviction. See People v. Bonilla, 753 N.Y.S.2d 727 (1st Dept. 2003). In its decision, the Appellate Division stated that:

5

> The verdict was not against the weight of the evidence. The victim provided a detailed, convincing account of defendant's sexual misconduct. Issues of credibility were properly considered by the jury and there is no basis for disturbing its determinations. The lack of physical evidence did not cast doubt on the victim's testimony, in light of the nature of the abuse which involved touching, kissing and oral sex.

Id. at 727-28.

By letter dated February 25, 2003, Bonilla's appellate counsel sought leave to appeal to the New York Court of Appeals. (See Pree Aff. Ex. 4 (Leave Letter)). On August 11, 2003, Judith S. Kaye, Chief Judge of the New York Court of Appeals, summarily denied that application. See People v. Bonilla, 100 N.Y.2d 592 (2003).

Bonilla's habeas petition is dated January 6, 2004, and was timely received by the Pro See Office of the Court on February 17, 2004. (Docket No. 2). Thereafter, on or about April 29, 2004, Your Honor referred the case to me for a Report and Recommendation. (Docket No. 3).

III.   Discussion

  A.   Exhaustion

Bonilla's petition may not be granted unless he has exhausted all available state court remedies, or there is an absence of state corrective process, or circumstances render that process ineffective to protect his rights. See 28 U.S.C. §§ 2254(b)(1)(A), (B). As a defendant charged with crimes in New York State, Bonilla unquestionably had an effective process available to him through the existing state statutes governing appeals

and collateral challenges in criminal cases.  See CPL §§ 440.10, 450.10 (McKinney 2005).  Therefore, to satisfy the exhaustion requirement with respect to a particular federal claim, Bonilla must show that he presented to the highest state court the substance of the same federal constitutional claim that he now raises in federal court.  Aparicio v. Artuz, 269 F.3d 78, 89-90 (2d Cir. 2001).

A federal constitutional claim has not been fairly presented to the state courts unless a petitioner has "informed those courts of 'all of the essential factual allegations' and 'essentially the same legal doctrine he asserts in his federal petition.'" Strogov v. Att'y Gen. of N.Y., 191 F.3d 188, 191 (2d Cir. 1999) (quoting Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 191-92 (2d Cir. 1982)).  To meet this requirement, it is not necessary that the federal constitutional claim be presented to the state courts in haec verba.  Rather, there are a number of ways in which the claim may be presented, including:

> [(1)] reliance on pertinent federal cases employing constitutional analysis, [(2)] reliance on state cases employing constitutional analysis in like fact situations, [(3)] assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and [(4)] allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye, 696 F.2d at 194.

In this case, the Court need not determine whether Bonilla exhausted all of his claims because 28 U.S.C. § 2254(b)(2) expressly provides that a habeas petition may

7

be denied despite a petitioner's failure to exhaust all of the state court remedies available to him. Here, as set forth below, there is no merit to Bonilla's claims. Accordingly, the Court may reach them even if they are unexhausted.

    B.    Merits

        1.    Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. Herrera v. Collins, 506 U.S. 390, 401 (1993). Instead, a state prisoner seeking habeas relief under Section 2254 must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner thus has the burden of proving, by a preponderance of the evidence, that his rights have been violated. See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides, in part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000), the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'" "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. This standard does not require that reasonable jurists would all agree that the state court was wrong. Id. at 409-10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Stinson, 229 F.3d. at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) also authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Finally, to the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that: "a determination of a factual issue by a State court shall

9

be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."  Williams v. Taylor, 529 U.S. at 389.

    2.    Brady

In his petition, Bonilla alleges that the People failed to disclose the medical records of Sofia T.'s visit to the hospital on September 8, 1999.  (See Pet. ¶ 15).  Bonilla asserts that if those records had been turned over to the defense, the outcome of the case would have been different.  (See Pet. Attach. (Aff. of Pet'r, sworn to Jan. 6, 2004) ("Bonilla Aff.") ¶ 9).

Brady v. Maryland, 373 U.S. 83, 87 (1963), requires that, upon request, the prosecution disclose evidence favorable to the defendant which is material to either guilt or punishment.  Thus the prosecution must disclose both exculpatory material and material that might be used to impeach the credibility of a prosecution witness.  United States v. Wong, 78 F.3d 73, 79 (2d Cir. 1996).  To establish a Brady violation, a petitioner must demonstrate "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  United States v. Bagley, 473 U.S. 667, 682, (1985).  In sum, a petitioner must show that:  (a) the

evidence was favorable to the accused, either because it was exculpatory or impeaching; (b) the evidence was suppressed, either willfully or inadvertently, by the prosecution; and (c) the omission caused prejudice. Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Bonilla contends that the prosecution ran afoul of Brady in his case by failing to turn over the records related to Sofia's medical examination at Lincoln Hospital. (See Pet. ¶ 15). Although neither the prosecutor nor defense counsel introduced those records into evidence during the trial, the record strongly suggests that they were disclosed. At a pretrial conference on January 11, 2000, defense counsel specifically requested that he be given those records as part of pretrial discovery. (See 1/11 Tr. 3). The prosecutor responded that the medical records were not then in her possession, but that she would forward them to the defense counsel as soon as she received them. (Id.) Thereafter, during a pretrial conference on May 26, 2000, Bonilla's defense counsel stated, "Just so the record is clear, [the prosecutor] has given me all the discovery except the Grand Jury minutes." (5/26 Tr. 6). This statement constitutes a tacit admission that, notwithstanding Bonilla's assertions, the prosecutor did turn over Sofia's medical records more than one month before the start of the trial.

In any event, even if the prosecutor failed to turn over the records, Bonilla has not shown that they would have been favorable to him, that the prosecutor suppressed them, or that the omission of the records caused him prejudice. Indeed, as the Appellate

11

Division noted, it is unlikely that a hospital examination would have yielded any meaningful evidence for either side given the nature of Bonilla's abuse.

Bonilla's Brady material claim is consequently meritless.

### 3. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate (a) that his counsel's performance was so defective that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (b) that, but for the counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984). A defendant seeking to overturn a conviction on the ground of ineffective assistance of counsel thus bears a heavy burden. United States v. Gaskin, 364 F.3d 438, 459 (2d Cir. 2004).

In his habeas petition, Bonilla asserts that his trial counsel was ineffective, but has not provided any support for this claim apart from a conclusory statement that his trial attorney "didn't do his job [and] didn't submit[] any motion adequate in any form defending petitioner." (Pet. ¶ 15). In fact, the record establishes that Bonilla's trial counsel's performance was more than adequate. For example, defense counsel did file pretrial motions. (See generally 1/11 Tr.; 5/26 Tr.). Counsel also gave an opening statement, (Tr. 259-62), made objections during the prosecution's direct examinations,

12

(see, e.g., id. at 73, 78, 87, 91), conducted appropriate cross examinations, (see, e.g., id. at 7, 25, 92, 152), and gave a spirited summation, (id. at 266-84).

In short, defense counsel's representation of Bonilla did not fall below an objective standard of reasonableness, nor has Bonilla shown that he suffered any prejudice as a result of any alleged shortcomings in counsel's performance. See, e.g., Harris v. Hollins, No. 95 Civ. 4376 (HB), 1997 WL 633440, at *6 (S.D.N.Y. Oct. 14, 1997) (defense counsel who made pretrial motions, gave an opening statement, cross-examined witnesses, made objections and motions, and gave a comprehensive summation was not ineffective). Bonilla therefore has failed to meet his heavy burden under Strickland.

        4.        Weight and Sufficiency of the Evidence

In his petition, Bonilla also asserts that his conviction was contrary to the weight and sufficiency of the evidence.

A habeas petitioner challenging the sufficiency of the evidence bears a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995) (internal quotation marks omitted). To prevail, the petitioner must show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) (quoting Jackson v. Virginia, 443 U.S. 307, 324 (1979)). Moreover, in considering such a sufficiency claim, the reviewing court must weigh the evidence in the light most favorable to the prosecution and draw all permissible

13

inferences in its favor.  Jackson, 443 U.S. at 326.  A sufficiency claim therefore does not permit the reviewing court to redetermine the credibility or reliability of witnesses or substitute its view of the evidence for that of the trier of fact.  See Marshall v. Lonberger, 459 U.S. 422, 434 (1983); Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).  Rather, insofar as there is evidence from which the jury could have drawn an inference favorable to the accused, but chose not to, the court must "defer to . . . the jury's choice of the competing inferences."  United States v. Kinney, 211 F.3d 13, 18 (2d Cir. 2000) (quoting United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998)).  For this reason, "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction."  United States v. Danzey, 594 F.2d 905, 916 (2d Cir. 1979); see also Edwards v. Jones, 720 F.2d 751, 755 (2d Cir. 1983) (following Danzey although the testimony and character of the sole witness who directly implicated the petitioner were "less than inspiring"); Means v. Barkley, No. 98 Civ. 7603 (DLC), 2000 WL 5020, at *4 (S.D.N.Y. Jan. 4, 2000) (applying Danzey and noting that a reviewing court may set aside a conviction only if the testimony is "incredible as a matter of law").

    In this case, the testimony of the victim, if believed, was sufficient to convict Bonilla.  At the trial, Sofia testified in considerable detail about Bonilla's sexual abuse over the course of two years.  Among other things, she described how Bonilla touched her vagina, forced her to put his penis in her mouth, and threatened to kill her and her family if she told anyone.  (See Tr. 52-53, 67-70).  The jury's decision to credit the

testimony of Sofia, who was twelve years old by the time of trial, (see id. at 41), is precisely the sort of determination that a federal habeas court may not second guess.

Accordingly, Bonilla's claim that the evidence was insufficient to sustain his conviction is meritless.[3]

IV.   Conclusion

For the foregoing reasons, Bonilla's habeas petition should be dismissed. Furthermore, because Bonilla has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

---

[3]   On the last page of his petition, Bonilla asserts that the record does not reveal "what actually happened . . . because [he] is innocent." (Bonilla Aff. at 8). Such a claim of "actual innocence" can arise in two different contexts, each of which necessitates a separate standard of review.

In proceedings in which the claim of actual innocence does not constitute a substantive claim, but is merely a threshold through which the petitioner must pass to overcome his procedural default, the Supreme Court has held that a petitioner need only show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." See Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298, 326-27 (1995) (applying Carrier standard). In contrast, where the claim of actual innocence would be pressed even if the trial were error free, a habeas court must apply an "extraordinarily high" standard of review. Schlup, 513 U.S. at 315-16 (quoting Herrera, 506 U.S. at 426). In such circumstances, the petitioner must show that "no rational trier of fact could [find] proof of guilt beyond a reasonable doubt." Herrera, 506 U.S. at 421 (O'Connor, J., concurring) (quoting Jackson v. Virginia, 443 U.S. 307, 314 (1979)); see also Sawyer v. Whitley, 505 U.S. 333, 335 (1992) (requiring clear and convincing evidence that "no rational juror would find" petitioner eligible for the death penalty).

Here, it seems clear that Bonilla's claim of actual innocence is not set forth in response to any procedural default argument advanced by the respondent and therefore falls into the latter category of innocence claims. However, as noted above, Bonilla clearly cannot show that no rational juror could have convicted him. There consequently is no basis for any actual innocence claim.

V.   **Notice of Procedure for Filing of Objections to this Report and Recommendation**

The parties are hereby directed that if they have objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Laura Taylor Swain, and the Chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, NY 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Swain. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:   New York, New York
         February 16, 2007

                                        _____
                                        FRANK MAAS
                                        United States Magistrate Judge

Copies to:

Honorable Laura Taylor Swain
United States District Judge

Norberto Bonilla
#00-A-4510
Gowanda Correctional Facility
P.O. Box 311
Gowanda, New York 14070

Cynthia J. Pree, Esq.
Assistant District Attorney
Office of the District Attorney
198 East 161 Street
Bronx, New York 10451
(718) 590-6523 (fax)